Filed 6/17/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JEREMY SWANSON, Individually and as Successor In Interest, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>COUNTY OF RIVERSIDE,<br><br>    Defendant and Appellant. | D075081<br><br><br><br>(Super. Ct. No. RIC1611766) |
| MELODY ANDERSON-MARTIN, Individually and as Successor In Interest, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>COUNTY OF RIVERSIDE,<br><br>    Defendant and Appellant. | (Super Ct. No. RIC1612885) |

APPEAL from an order of the Superior Court of Riverside County, Irma Asberry, Judge. Affirmed.

Thompson & Colegate and Susan Knock Beck for Defendant and Appellant.

Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria, Steven Schuetze; Panish Shea & Boyle and Brian J. Panish for Plaintiffs and Respondents Jeremy Swanson, Josh Swanson, Lesli Swanson-Harvey, Michael Andersen, Chad Andersen and Brooke Andersen.

Taylor & Ring, David M. Ring and James W. Lewis for Plaintiffs and Respondents Melody Andersen-Martin, Sean Michael Martin, and the Estate of Michael Lee Martin.

## INTRODUCTION

Brandon M. was taken to Riverside County Medical Center by the Corona Police Department for an involuntary hold, pursuant to Welfare and Institutions Code[1] section 5150. He was released before 72 hours had elapsed, and he returned home, where he bludgeoned three people to death with a baseball bat. Surviving family members, who are successors in interest or heirs, (collectively Respondents) filed lawsuits against the County of Riverside (County) for his release, alleging negligence. The County filed a special motion to dismiss under Code of Civil Procedure section 425.16, the anti-SLAPP statute. The County contended the complaints should be struck because they alleged harm arising from protected activity and because Respondents could not show a reasonable probability their suit would be successful on the merits. Respondents countered that the County's actions did not arise from any petition or speech-related

---

[1]     All further section references are to the Welfare and Institutions Code unless otherwise noted.

activity and so were not subject to the anti-SLAPP statute. The trial court denied the County's motion, and the County appealed.

The County contends the trial court improperly denied its special motion to strike because (1) the procedures outlined in the Lanterman-Petris-Short Act (LPS Act) constitute an "official proceeding authorized by law," as that term is used in Code of Civil Procedure section 425.16, subdivision (e)(1) or (2); (2) the County's activity in connection with section 5152 is a statement made before or in connection with an issue under consideration by an official proceeding; and (3) Respondents cannot demonstrate they have a probability of success on the merits. While we briefly address the County's interpretation of the LPS Act as an official proceeding authorized by law, we find it unnecessary to draw a conclusion on that issue to reach a decision in this matter. Instead, we affirm the trial court's ruling on the basis that the alleged activity is not protected speech and, therefore, does not give rise to application of the anti-SLAPP statute. Because we conclude the County has not met its burden on the first prong of the anti-SLAPP statute, there is no need to evaluate the evidence to determine if Respondents have met their burden of demonstrating their claims have a probability of success on the merits.

BACKGROUND AND PROCEDURAL FACTS[2]

On September 15, 2015, Brandon was admitted to Riverside County Regional Medical Center on a 72-hour involuntary hold after he attacked his mother with a pair of scissors. The medical center released Brandon on September 17, 2015, before the expiration of 72 hours. Brandon returned to his family's home, where he bludgeoned his father, his uncle, and an alarm company technician who was installing an alarm system in the family home at the time. All three victims died from their injuries.

Respondents filed complaints against the County of Riverside in separate lawsuits on September 13, 2016 and October 4, 2016. The complaint filed by the Swansons and Andersens included causes of action for negligence per se, negligent hiring or supervision, and negligence. This complaint alleged the County left Brandon in a waiting room and discharged him for lack of space before the expiration of the 72-hour period, then provided him a bus pass to return home. The complaint also alleged on information and belief that Brandon had never been assigned a room. It alleged the County failed to evaluate Brandon, failed to assess Brandon to determine if he could be served without detention, allowed Brandon to be released prior to the expiration of 72 hours without being seen by a psychiatrist, and allowed Brandon to be released for reasons other than his treating psychiatrist's personal observations.

---

[2] The parties stipulated to a protective order in the trial court. As a result, unredacted versions of Respondents' appellate briefs, along with the court transcripts were filed with this court under seal. (Cal. Rules of Court, rules 8.46(b) & 8.46(g).) Because we have reached a decision that does not depend on the factual details of the case, we have limited our discussion of the facts to those already publicly disclosed in the lower court filings and in the redacted versions of the briefs.

The Andersen-Martins and the Martins' wrongful death complaint included causes of action for negligence per se and negligent hiring or supervision. It alleged the County told Brandon's mother on September 17, 2015, that Brandon would likely be discharged from the medical facility, and there was nothing it could do to prevent the discharge. It further alleged on information and belief that Brandon was never given a room; nor did he receive the treatment or evaluations from the medical center. Like the other complaint, this one alleged the County failed to evaluate Brandon, failed to assess Brandon to determine if he could be served without detention, allowed Brandon to be released prior to the expiration of 72 hours without being seen by a psychiatrist, and allowed Brandon to be released for reasons other than his treating psychiatrist's personal observations.

The cases were consolidated in November 2016. In January 2017, the County filed a special motion to strike (anti-SLAPP motion) against both complaints. The County argued the procedure set forth in Welfare and Institutions Code section 5150 et seq. is an "official proceeding," as the term is employed in Code of Civil Procedure section 425.16, subdivision (e). The County further argued that Respondents could not make the necessary evidentiary showing required by Code of Civil Procedure section 425.16, subdivision (b)(2). Respondents argued that the matter did not implicate any interference with a person's right to petition or free speech and that they could meet their prima facie burden to support a judgment.

The County submitted declarations in support of its motion to strike,[3] including one by the treating psychiatrist of record, Dr. Debbie Ann Imperial Rosario, and another by Dr. Erick H. Cheung, a licensed psychiatrist retained by the County as an expert. In Dr. Rosario's declaration, she stated Brandon was assessed by qualified professionals who analyzed his medical, psychological, educational, social, financial, and legal conditions. She also stated a licensed psychiatrist performed a psychiatric evaluation on Brandon early in the morning on September 16, 2015, and determined admission was appropriate. After Brandon was admitted, a psychiatric in-patient physician assessment was performed, and checks on Brandon were documented every 15 minutes. She explained that the chart containing multidisciplinary progress notes, along with other relevant information, was used to determine if Brandon should be detained. Based on her personal observations as Brandon's attending psychiatrist and the other information at the time, she concluded Brandon did not meet the criteria to remain detained under section 5152, and he was permitted to discharge.

Dr. Cheung's declaration explained the process followed when a person has been referred for an evaluation under section 5150. He noted that records showed Brandon's admission in the early morning on September 16, 2015, where he received "a full multidisciplinary assessment by appropriate licensed personnel," including a psychiatric evaluation. He also confirmed 15-minute safety checks were recorded.

---

3     Declarations are permissible in lieu of affidavits as long as the statements are made under penalty of perjury in California. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941.)

6

The parties stipulated to limited discovery of Brandon's medical records, as well as the deposition of Brandon's treating psychiatrist. In June 2017, Respondents submitted their oppositions to the motion to strike. Respondents challenged the veracity of Dr. Rosario's declaration, in particular her statement that she personally observed Brandon and determined no evaluation or treatment was necessary. Respondents offered a transcript of Dr. Rosario's deposition and identified inconsistencies between statements in her declaration and deposition that they contend show she did not personally observe Brandon before discharging him. Respondents also argued in the trial court, as they do before us, that their suit did not arise from an act in furtherance of the rights of petition or free speech.

The court heard oral arguments in June 2017 and denied the motion to strike, concluding the anti-SLAPP statute was not applicable to the commitment procedure outlined in section 5150 et seq. The court also concluded the commitment procedures did not involve a matter of public interest, and section 5152 does not involve interference with a person's right to petition or free speech. It further concluded the facts in the complaint did not indicate the cause of action arose from a written or oral statement in connection with an issue under consideration before an authorized proceeding. The court did not reach the issue of whether Respondents showed a sufficient likelihood of success on the merits. The County timely appealed.

7

DISCUSSION

A.

*Legal Principles*

1.  Lanterman-Petris-Short Act

The LPS Act (§ 5000 et seq.) provides the framework for the involuntary treatment of people with a mental health disorder.  (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008.)  The purpose of the act, among other things, is to eliminate the inappropriate, indefinite, and involuntary commitment of people with mental health disorders, provide prompt evaluation and treatment of people with mental health disorders, and protect public safety.  (§ 5001, subds. (a)-(c).)

Under the LPS Act, an individual may be brought to a psychiatric facility for an evaluation when there is probable cause to believe the person is a danger to himself or herself or others, or is gravely disabled as a result of a mental disorder.  (§ 5150, subd. (a).)  The facility may detain an admitted individual for up to 72 hours for treatment and evaluation.  (§ 5151.)  Once admitted, the patient must receive an evaluation as soon as possible, as well as treatment and care for the full length of the detention.  (§ 5152, subd. (a).)  The person may be released before the expiration of 72 hours if the psychiatrist responsible for the person's treatment believes, as a result of personal

observations, that the person no longer requires evaluation or treatment.[4] (§ 5152, subd. (a).)  When the provisions of section 5152 are followed, the person in charge of the facility, its medical director, and the psychiatrist responsible for the person's treatment have immunity from civil or criminal liability for an action by the person released before the expiration of 72 hours.  (§ 5154, subd. (a).)

Although there is no private right of action for a violation of section 5152, "aggrieved individuals can enforce the Act's provisions through other common law and statutory causes of action, such as negligence, medical malpractice, false imprisonment, assault, battery, declaratory relief, United States Code section 1983 for constitutional violations, and Civil Code section 52.1.  [Citations.]"  (*Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 382 (*Julian*).)

2.  Code of Civil Procedure Section 425.16, the Anti-SLAPP Statute

We review an order denying a motion to strike brought pursuant to Code of Civil Procedure section 425.16 de novo.  (*Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 940; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)  We evaluate an anti-SLAPP motion through a two-step process.  First, the moving party bears the burden of establishing the

---

[4]    In situations where a psychologist has also personally observed the person and the psychologist has a collaborative treatment relationship with the psychiatrist, either the psychiatrist or the psychologist may authorize an early release after consulting the other practitioner. (§ 5152, subd. (a).)  Both professionals enter findings, concerns, and objections into the person's medical record.  (*Ibid.*)  When there is a collaborative treatment relationship and the psychiatrist and psychologist disagree about releasing the person before 72 hours have elapsed, the hold is maintained unless the facility's medical director overrules the decision.  (*Ibid.*)

challenged allegations arise from protected activity. (Code Civ. Proc., § 425.16, subd. (b); *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) " 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [Code of Civil Procedure] section 425.16, subdivision (e).' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*), quoting *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 (*Braun*).)

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (Code of Civ. Proc., § 425.16, subd. (e)(1) & (2).)

If the defendant meets the first prong by demonstrating the challenged act was one in furtherance of a person's right of petition or free speech, the burden shifts to the plaintiff to show the claims have "minimal merit." (*Navellier*, *supra*, 29 Cal.4th at p. 89.) In reviewing a special motion to strike, we do not weigh credibility or compare the weight of the evidence. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) Instead, we "accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118

10

Cal.App.4th 204, 212.)  Only claims that meet both prongs of the anti-SLAPP statute are subject to being stricken.  (*Navellier*, at p. 89.)

B.

*Whether Section 5152 Establishes an Official Proceeding Authorized by Law*

The County contends it meets the first prong of the anti-SLAPP statute requirements because the lawsuit involves an official proceeding authorized by law.  Its theory is the LPS Act established an "official proceeding authorized by law" and, therefore, actions taken in connection with Welfare and Institutions Code section 5152 cannot properly be challenged, pursuant to Code of Civil Procedure section 425.16.  In its reply brief, the County explains its "conduct is actually a written statement made in connection with the LPS Act's official proceeding that is authorized by law," and it states, "the written statement is actually the evaluation and discharge order by the County's supervising psychiatrist under the LPS Act. . . ."

The fact that a statute governs a given set of procedures does not make it an " 'official proceeding authorized by law.' "  (*Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 9.)  However, the County contends the procedure detailed in section 5152 is an official proceeding authorized by law, comparing it to the hospital peer review proceedings detailed in the Business Professions Code (Bus. & Prof. Code, § 809 et seq.) and discussed in *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 (*Kibler*).

"Peer review is the process by which a committee comprised of licensed medical personnel at a hospital 'evaluate[s] physicians applying for staff privileges, establish[es]

11

standards and procedures for patient care, assess[es] the performance of physicians currently on staff,' and reviews other matters critical to the hospital's functioning." (*Kibler*, *supra*, 39 Cal.4th at p. 199, quoting *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 10; Bus. & Prof. Code, § 805, subd. (a)(1)(A)(i)-(ii).)

Business and Professions Code section 809 explains that the peer review process is "essential to preserving the highest standards of medical practice," and "fairly conducted," it "aid[s] the appropriate state licensing boards in their responsibility to regulate and discipline errant healing arts practitioners." (Bus. & Prof. Code, § 809, subds. (a)(3) & (5).) The purpose of the peer review process is "[t]o protect the health and welfare of the people of California" by excluding practitioners who "provide substandard care or who engage in professional misconduct," and the Legislature expects peer review to "be done efficiently, on an ongoing basis." (Bus. & Prof. Code, § 809, subds. (a)(6) & (7).)

In *Kibler,* the Supreme Court concluded a hospital's peer review proceeding qualifies as an " 'official proceeding authorized by law' " under Code of Civil Procedure section 425.16, subdivision (e)(2). (*Kibler*, *supra*, 39 Cal.4th at p. 198.) The court reasoned that the proceedings were statutorily mandated and heavily regulated, and that hospitals were required to report the results of the proceedings to state licensing boards, showing their proceedings play a "significant role" in regulation and discipline of

practitioners.[5]  (*Id.* at pp. 199-200.)  The court also commented that the decisions resulting from the proceedings are subject to judicial review by administrative mandate, making the proceedings quasi-judicial.  (*Id.* at p. 200.)

The LPS Act sets forth requirements for releasing an individual before 72 hours has expired in section 5152.  However, the procedure in section 5152 is different from peer review both in purpose and form.  The peer review process is intended to regulate practitioners, thereby protecting public health.  (Bus. & Prof. Code, § 809, subd. (a)(6).)  The purpose of the LPS Act is to ensure protection against improper detention; "the Legislature [has] determined that the act's goal of ending indefinite confinements outweighed the early release potential for harm."  (*Ford v. Norton* (2001) 89 Cal.App.4th 974, 979; § 5001, subds. (a), (c).)

The procedures are also different.  The peer review process contemplates the use of a committee of professionals who meet to review information about a practitioner (Bus. & Prof. Code, § 805, subd. (a)(1)(A)-(B)), while section 5152 generally relies on the personal observations of a single medical professional.  (§ 5152, subd. (a).)  As part of the peer review proceedings, practitioners must be given an opportunity for a noticed hearing and the presentation of evidence before a proposed disciplinary action occurs. (Bus. & Prof. Code, §§ 809.1-809.4.)  No corollary exists for 72-hour detentions under

---

5      The County relies on *Julian* for the proposition the LPS Act "sets forth a comprehensive scheme for its enforcement" (*Julian*, *supra*, 11 Cal.App.5th at p. 381) and to explain the purpose of the LPS Act is to provide " 'prompt evaluation and treatment of persons with mental health disorders.' "  (*Id*. at pp. 374-375.)  *Julian* does not address the applicability of the anti-SLAPP statute to the LPS Act.

13

the Welfare and Institutions Code. (§ 5152.) While the peer review process provides for judicial review by administrative mandate (Bus. & Prof. Code, §§ 809.1-809.4), the Welfare and Institutions Code only expressly provides for judicial review of a decision to detain a person.[6] (§§ 5256, 5275.) Here, the challenged decision was to discharge Brandon, not to detain him beyond 72 hours.

Moreover, the procedure detailed in section 5152 does not give rise to the exercise of petition or free speech, which the anti-SLAPP statute is designed to protect. The Supreme Court has explained that "[a]ny matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights [Code of Civil Procedure] section 425.16 was intended to protect." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) Thus, the reason an allegation raised pursuant to subdivisions (e)(1) and (2) does not require a showing that the issue is one of public importance is because the Legislature "*equated* a public issue with the authorized official proceeding to which it connects." (*Braun*, *supra*, 52 Cal.App.4th at p. 1047.)

Yet section 5152 does not involve presumptively public proceedings, and the confidentiality provisions of the LPS Act indicate that decisions related to sections 5150

---

6     "After the initial 72-hour detention, the 14-day and 30-day commitments each require a certification hearing before an appointed hearing officer to determine probable cause for confinement unless the detainee has filed a petition for the writ of habeas corpus. (§[§] 5256, 5256.1, 5262, 5270.15, 5275, 5276.) A 180-day commitment requires a superior court order. (§ 5301.)" (*Conservatorship of Susan T.*, *supra*, 8 Cal.4th at p. 1009.)

and 5152 must remain confidential barring an enumerated exception providing for limited disclosure. (§§ 5118, 5328; see *People v. Dixon* (2007) 148 Cal.App.4th 414, 427-428 [LPS Act proceedings aimed at determining status of person's mental health, which is primarily personal and confidential]; see, e.g., *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 444, 448 [LPS Act requires privacy and confidentiality; conservatorship proceedings and hearings presumptively non-public].) Because proceedings under the LPS Act are not presumptively public in nature, speech in connection with it is not the type of speech the anti-SLAPP statute is designed to protect.

Given the differing purposes of the peer review process and the LPS Act, as well as clear distinctions in the rights afforded to the parties who are subject to the peer review proceedings and the procedures detailed in section 5152, we doubt the LPS Act procedures like section 5152 can properly be characterized as an official proceeding authorized by law. However, we need not make this determination because, as we explain, the claims against the County do not arise from any written or oral statements subject to the anti-SLAPP statute.

## C.

### *Whether the Decision Statement Is a Protected Activity*

To justify an order to strike the complaints, the County must demonstrate its actions arose from a protected activity. (*Park*, *supra*, 2 Cal.5th at p. 1069, citing *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 58.) "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier*, *supra*, 29 Cal.4th at

15

p. 89.)  The County contends the "evaluation and recommendation that Brandon be discharged" is "a *statement* made in an official proceeding and is subject to the anti-SLAPP statute."  We disagree.

"[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity.  Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Park*, *supra*, 2 Cal.5th at p. 1060.)  Conduct arises from protected activity if " 'the gravamen or principal thrust' " of the cause of action is the protected conduct.  (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.)  This is because "to deny protection to individuals weighing in on a public entity's decision might chill participation from a range of voices desirous of offering input on a matter of public importance.  But no similar concerns attach to denying protection for the ultimate decision itself, and none of the core purposes the Legislature sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them."  (*Park,* at p. 1071.)

"In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' ([Code of Civil Procedure] § 425.16, subd. (b).)"  (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

16

Respondents have not sued the County because of the substance of statements made in connection with the section 5152 procedures.  They have sued the County to challenge as negligent the decision to release Brandon before the expiration of 72 hours.  Thus, the gravamen of the complaint is negligence.

As Respondents note, their allegations related to whether the County engaged in misconduct and violated statutory provisions.  Respondents do not seek recovery for the County's act of communicating information on Brandon's medical records.  Instead, their allegations regard the County's alleged inaction and failure to comply with section 5152 and the decision to release Brandon before 72 hours expired.  There is nothing in the County's decision to release Brandon before the 72-hour hold that implicates the rights of free speech or petition.  Therefore, it is not protected by the anti-SLAPP statute.

D.

*Probability of Success*

The County identifies several immunity claims to demonstrate why Respondents cannot meet their burden under the second prong of the anti-SLAPP statute by showing probability of success.  Having concluded the first prong of the statute is not met, we need not evaluate the evidence to determine whether Respondents could meet their burden of proof.[7]

---

[7]    We note the immunity claims raised under Government Code sections 820.2, 854.8, and 855.6 each appear to hinge on factual disputes in the matter.

17

DISPOSITION

The order is affirmed.  Costs are awarded to Respondents on appeal.


                                                        HUFFMAN, Acting P. J.

WE CONCUR:



IRION, J.



GUERRERO, J.