Filed 9/30/20  Vanderkallen v. Glen Ivy Recreational etc. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SHERI VANDERKALLEN et al., | |
| Plaintiffs and Respondents, | E072622 |
| v. | (Super.Ct.No. RIC1820767) |
| GLEN IVY RECREATIONAL VEHICLE PARK OWNERS ASSOCIATION, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  L. Jackson Lucky IV, Judge.  Affirmed.

Angius & Terry, Cang N. Le, Dylan D. Grimes and Joshua D. Mendelsohn for Defendant and Appellant.

Law Offices of Thomas N. Jacobson and Thomas N. Jacobson for Plaintiffs and Respondents.

In a First Amended Complaint (FAC), Sheri Vanderkallen (Sheri), Daniel Vanderkallen (Daniel), and Jonnie Little (Little) sued the Glen Ivy Recreational Vehicle

Park Owners Association (the Association). The lawsuit involved three causes of action: (1) breach of the Association's governing documents and rules; (2) unfair competition (Bus. & Prof. Code, § 17200); and (3) breach of the covenant of good faith and fair dealing. The Association responded to the FAC with an anti-SLAPP motion. (Code Civ. Proc., § 425.16.)[1] The trial court denied the motion. The Association contends the trial court erred by denying its anti-SLAPP motion. We affirm the order.

**FACTUAL AND PROCEDURAL HISTORY**

A. FAC

Sheri, Daniel, and Little (collectively, Plaintiffs) filed their original complaint on October 9, 2018. The facts in this subsection are taken from the allegations in the FAC. Plaintiffs are members of the Association.[2] The Association is a nonprofit mutual benefit corporation with a board of directors (the Board). Carisa Mackey and Mimi McMullen camped in the Glen Ivy Recreational Vehicle Park (the RV Park).

"On May 3, 2018, [Sheri] was attacked and assaulted by Mimi McMullen and Carisa Mackey. The police were called and a police report was prepared. The police report did not charge anyone with a crime but found Ms. McMullen and Ms. Mackey were the perpetrators of the assault." The Association asked Sheri for a written explanation of the events of May 3. Sheri did not complete the written report due to being occupied with caring for her ill husband.

---

[1] All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

[2] The FAC does not set forth the relationships between Plaintiffs.

2

The Association scheduled a hearing for July 6, 2018, and sent a notice to Plaintiffs "demanding Plaintiffs appear." On July 30, the Association sent a letter "demand[ing] Plaintiffs leave the RV Park by August 14, 2018." On August 15, the Association had Sheri served with a Notice to Vacate.

In the breach of governing documents cause of action, Plaintiffs alleged, "There is no provision in the CC&Rs or bylaws for expulsion. [¶] The Rules and Regulations do not contain a remedy of expulsion." Further, Plaintiffs contended, "[The Association] has not complied with the governing documents in its attempt to exclude Plaintiffs from the Association because it has not followed the step up discipline set forth in the governing documents."

In the unfair competition cause of action (Bus. & Prof. Code, § 17200), Plaintiffs alleged, "[The Association] has engaged in a discriminatory, unlawful and unfair business practice by allowing members of its Board of Directors to act arbitrarily and for purposes of revenge in taking steps to remove a member from the RV Park without uniformly applying rules and addressing issues within the RV Park."

In the cause of action for breach of the covenant of good faith and fair dealing, Plaintiffs alleged, "[The Association] has failed and refuses to apply its governing documents in a fair and equitable manner in that it has attempted to remove Plaintiffs from the RV Park without due process and following the terms and provisions of the governing documents. It has not exercised the same or similar discipline against the perpetrators of the May 3, 2018 attack of Plaintiff, Sheri Vanderkallen, nor has it taken any similar actions against other perpetrators of disturbances within the RV Park. [The

3

Association has] failed to follow the disciplinary procedures set forth in the governing documents of using stepped up discipline." In their prayer for relief, Plaintiffs requested damages, costs, attorneys' fees, punitive damages, and any other proper relief.

B.      ANTI-SLAPP MOTION

The Association responded to the FAC with an anti-SLAPP motion. (§ 425.16.) The Association asserted the RV Park "is open to the public who can rent a space in the [RV] Park to park their RV and utilize the [RV] Park's amenities such as swimming pools, bar-b-ques, recreational room, general store, and restaurant. [Citation.] The [RV] Park is also a stock cooperative common interest development that provides purchasable membership interest[s]. [Citation.] A membership interest gives a person exclusive occupancy to a space in the [RV] Park, free use of the [RV] Park for 81 days out of the year, advance reservation rights over the general public, rights to serve on the Association's board of directors, and voting rights to elect directors and partake in the governance and affairs of the [RV] Park. [Citation.] However, unlike other common interest development[s], i.e., condominium projects or planned unit developments, the [RV] Park is not intended for permanent residency as a membership interest only provides for a right of occupancy not a fee ownership interest to land or even airspace for permanent residential purposes.

"As a common interest development/owners association, the [RV] Park is managed by a board of directors comprised of seven volunteer members elected by the other members ('the Board'). [Citation.] The Board is tasked with managing the [RV] Park and to further the Association's purpose which is 'To promote the health, safety and

4

welfare of the Owner/Members which shall utilize the Project.' [Citation.] In line with that purpose, and given that the [RV] Park does not provide for permanent residency, the Park is authorized to bring unlawful detainer actions to remove a tenant or resident. [Citation.] The grounds for evicting a resident include failing to pay rent and failing to comply with the Park's rules and regulation[s] or engaging in conduct that harms or is a substantial annoyance to other residents. [Citation.] Indeed, the Association has obtained numerous eviction orders against residents and members for such failures."

The Board requested written statements from Plaintiffs concerning the May 3rd altercation, but Plaintiffs did not provide statements. Witnesses to the altercation provided written reports. "Witnesses reported Plaintiff Sheri Vanderkallen screaming profanities and threats at other residents, and assaulting residents by slapping and punching them. Plaintiff Sherri [*sic*] Vanderkallen was also witnessed making threats to minors. Plaintiff Daniel Vanderkallen was witnessed pushing and then body slamming a female resident. Plaintiff Jonnie Little was reported to have punched another female resident in the face."

On July 6, at a meeting of the Board, Daniel read a statement on behalf of Plaintiffs. The Board considered the statement and other documents. "[T]he Board voted at its July 6, 2018, meeting to expel Plaintiffs from the Park. [Citation.] Plaintiffs were provided further opportunities to appeal the Board's July 6, 2018 decision and other options short of expulsion. [Citation.] Ultimately, the Association filed an unlawful detainer action on October 31, 2018, to expel Plaintiffs from the [RV] Park."

In regard to the first prong of the anti-SLAPP analysis, the Association asserted that "board meetings of common interest developments (aka homeowners associations) are public forums under the anti-SLAPP statute." The Association asserted that the allegations in the FAC were focused upon the Board's July 6th "vote and action to expel Plaintiffs from the [RV] Park." The Association concluded, "Plaintiffs' claims arise from actions and votes by the Association at its board meetings, which is a public forum."

The Association also provided an argument concerning the second prong of the anti-SLAPP analysis but we omit it because it is not relevant to this opinion. In support of its motion, the Association filed the declaration of Jesse M. Martinez. Martinez is the "the onsite General Manager for the Association." Martinez gave an account of the July 6th Board meeting. Martinez declared, "At the July 6, 2018, board meeting, Plaintiff Daniel Vanderkallen appeared on behalf of all the Plaintiffs. He read a written statement from Plaintiffs' counsel. The Board also provided Plaintiff Daniel Vanderkallen time to inform of his version of events that occurred at the Incident argue [*sic*]. [¶] The Board considered the written statement from Plaintiffs' counsel, Plaintiff Daniel Vanderkallen's explanation on [*sic*] the Incident, the numerous witness statement [*sic*], its security patrol logs, and the civil harassment restraining orders against the Plaintiffs. [¶] In light of the overwhelming record that Plaintiffs attacked, assaulted, and threatened other residents, the Board unanimously voted at the July 6, 2018 meeting to suspend Plaintiffs' membership privileges for one year and expel the Plaintiffs."

In regard to Plaintiffs' appeal to the Board, Martinez declared, "The Board held another meeting on July 30, 2018, to consider Plaintiffs' appeal of the Board's decision at

its July 6, 2018, meeting. At the July 30 appeal hearing, only Plaintiffs Sheri Vanderkallen and Daniel Vanderkallen appeared and gave their versions of events of the Incident and requested the Board reconsider its decision to suspend their membership and expel them. [¶] The Board unanimously voted to uphold their prior vote to suspend Plaintiffs' membership privileges and expel the Plaintiffs with a demand for Plaintiffs to vacate by August 6, 2018."

### C.     OPPOSITION

Plaintiffs opposed the anti-SLAPP motion. Plaintiffs asserted, "Plaintiffs are equity holders in the [RV Park]. As such, Plaintiff, Sheri Vanderkallen holds eight shares; Plaintiff Jonnie Little holds four shares; and Plaintiff Daniel Vanderkallen hold[s] one share. [¶] Each share entitles the holder to place their recreational vehicle within the [RV] Park. Over the years the limitation on the number of days one may place their trailer on the park has been observed in the breach more than the enforcement. There are now many residents who have continuously lived at the Park for many consecutive years. [¶] Each share also entitles a holder to be a member of the homeowners' association, known as [the Association]."

Daniel is Sheri's son. Little is a friend of Sheri and Daniel. Sheri and Little have lived in the RV Park "for many years." The Association's President is Ed Self. Self dislikes Plaintiffs because he believes Sheri caused law enforcement to raid Self's residence "in the early 2000s." "Self called a meeting of the Board of Directors on July 6, 2018 for the purpose of removing [Plaintiffs] from the [RV] Park. The Board meeting was supposed to be a hearing, but from the onset Mr. Self announced the intention of the

7

Board to remove the Plaintiffs and there was no semblance of due process or a fair hearing." Plaintiffs appealed the Board's removal decision. The Board held an appeal hearing on July 20, 2018. "The tenor was the same as the first hearing with no due process."

Plaintiffs asserted the Association failed to apply its rules equally. Plaintiffs contended they were being treated differently than the other people involved in the May 3rd altercation. Plaintiffs asserted, "It is clearly unfair to be attempting to remove [Little and Daniel] from the [RV] Park when they had no part in the altercation." Plaintiffs contended the Board has a fiduciary duty to act in a fair and impartial manner and it failed in that duty.

Plaintiffs set forth the law for the first prong of the anti-SLAPP analysis, i.e., that the lawsuit must arise from the Association's protected activity. Plaintiffs then argued, "[The Association does] not show any wrongful purpose by Plaintiffs in bringing this action. At the time Plaintiffs commenced the action they were in danger of losing their place to live, one which in the case of [Sheri] had been home for 16 years." Plaintiffs argued the anti-SLAPP motion was frivolous. We omit Plaintiffs' argument pertaining to the second prong of the anti-SLAPP analysis.

D.   REPLY

The Association replied to Plaintiffs' opposition. The Association asserted, "Plaintiffs do not refute that their lawsuit arises from the decisions and actions at the board meetings of the Association . . . . Plaintiffs argue that there was not any wrongful purpose in filing this suit—but the issue under the anti-SLAPP statute is whether the

8

lawsuit arises from protected petitioning activity; and, to that issue, Plaintiffs make no substantive argument in their opposition." The Association further contended, "Indeed, Plaintiffs acknowledge they filed this action to try and stop the unlawful detainer action. [Citation.] But such an action is subject to the anti-SLAPP statute, and is also an impermissible counterclaim/cross-complaint to an unlawful detainer action." We omit the Association's argument pertaining to the second prong of the anti-SLAPP analysis.

E.    HEARING

The trial court held a hearing on the Association's anti-SLAPP motion. The trial court said, "I think the problem is a failure in proof in the declaration by Jesse Martinez, which I believe was the only declaration that was submitted in support of the motion. . . . The facts are silent as to whether that meeting was open to the public or whether any members of the public were present or free to speak. [¶] Now, implicitly, Mr. Martinez may be saying that, but it's the burden of the moving party to establish all the requisite facts in order for me to grant relief. And here, the declaration says there was a meeting, [P]laintiffs were there. Apparently one or more board members were there and everything is kind of left to the reader to figure out. And so, it's not that I disagree with you on the law, but it doesn't appear that your declaration, or I should say, Mr. Martinez's declaration establishes that this occurred in a public forum in order for me to grant relief." The trial court denied the anti-SLAPP motion "for the reasons that I stated

9

in the tentative[3], and that I believe that there is insufficient evidence that this was a public forum."

## DISCUSSION

### A.    LAW AND STANDARD OF REVIEW

"The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity.  Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  [Our high court has] described this second step as a 'summary-judgment-like procedure.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 [italics omitted].)  We apply the de novo standard of review.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

### B.    PROTECTED ACTIVITY

#### 1.    *LAW*

We examine whether Plaintiffs' FAC arises from an act in furtherance of the Association's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)  An " 'act in furtherance of a person's right of petition or free speech under the United States

---

3 The trial court's tentative ruling is not part of the record on appeal.

10

or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

"Acts of governance mandated by law, without more, are not exercises of free speech or petition."  (*San Ramon Valley Fire Protection Dist. V. Contra Costa County Employees' Retirement Assoc.* (2004) 125 Cal.App.4th 343, 354.)  Anti-SLAPP protections apply "to protect individuals weighing in on a public entity's decision" so that participation in matters of public interest is not chilled.  However, the same is not true "for the ultimate decision itself, and none of the core purposes the Legislature sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1071 (*Park*), fn. omitted; *Swanson v. County of Riverside* (2019) 36 Cal.App.5th 361, 373.)

All three of plaintiffs' causes of action are based upon the same activity.  Plaintiffs are challenging the Association's ultimate decision to expel plaintiffs.  Plaintiffs allege

11

the Association's CC&Rs, bylaws, and Rules and Regulations, do not include expulsion as a remedy. Plaintiffs alleged the Association "has not complied with the governing documents in its attempt to exclude Plaintiffs from the Association because it has not followed the step up discipline set forth in the governing documents." Plaintiffs are not challenging statements made by the Association, and plaintiffs are not suing individual members of the Board. Therefore, plaintiffs' lawsuit does not arise from the Association's protected activity. (See *Third Laguna Hills Mutual v. Joslin* (2020) 49 Cal.App.5th 366, 374 [similar conclusion].)

The Association contends that Plaintiffs' causes of action "fall within subdivision (e)(3) as they arise from statements and notices in connection with the Association's decision at its board meetings, which meetings, although not entirely open to the public or members, constitute a public forum under (e)(3)." As the Association's argument continues, it writes, "The actions that give rise to the Association's potential liability are its decisions to suspend and expel [plaintiffs] from the Project. . . . [Plaintiffs] claim the Association did not have the authority under its governing documents to expel them."

Section 425.16, subdivision (e)(3), provides protection for "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Plaintiffs are suing the Association for its decision to expel plaintiffs when the Association allegedly lacks the authority to do so. The decision to expel plaintiffs is distinct from statements or writings made in support or opposition to that decision. Statements or writings would be protected, but plaintiffs are not suing due

12

to statements or writings. Plaintiffs are suing due to the decision to expel them, and that decision is not protected. (*Park*, *supra*, 2 Cal.5th at p. 1071.)

The Association contends the lawsuit arises from protected conduct and cites section 425.16, subdivision (e)(4), to support that assertion. Section 425.16, subdivision (e)(4), provides that protected activity includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The Association's argument focuses primarily on the public interest factor. The factor on which we choose to focus is "the exercise of the constitutional right of petition or the constitutional right of free speech." (§ 425.16, subd. (e).) The Association asserts, "The actions that give rise to the Association's potential liability are its decision to suspend and expel [Plaintiffs] from the [RV Park]." The Association reasons, "These alleged actions and inactions directly stem from the Association's decision making at its board meetings." The Association's decision is not a protected activity. (*Park*, *supra*, 2 Cal.5th at p. 1071.) Therefore, we are not persuaded by the Association's reliance on section 425.16, subdivision (e)(4).

The Association relies upon *Ruiz v. Harbor View Community Association* (2005) 134 Cal.App.4th 1456. In *Ruiz*, the plaintiffs brought "nine causes of action stemming from the denial by [the homeowners' association] architectural committee of [the p]laintiffs' conceptual plans to rebuild their house . . . . In the libel cause of action, [one of the plaintiffs] allege[d] two letters written by [the homeowners' association's] attorney defamed him. The trial court denied [the homeowners' association's] anti-SLAPP

13

motion to strike the libel cause of action on the ground the letters" were not a protected activity. The appellate court held that "the two letters were protected speech under subdivision (e)(4) of section 425.16." (*Id.* at p. 1461.)

We are not persuaded by the Association's reliance on *Ruiz* because the focus of the anti-SLAPP motion in *Ruiz* were letters, i.e., writings. The focus of the *Ruiz* anti-SLAPP motion was not the ultimate decision to deny the plaintiff's architectural plans. Thus, *Ruiz* is distinguishable from the instant case because plaintiffs are suing due to the Association's ultimate decision to expel them.

The Association also relies upon *Lee v. Silveira* (2016) 6 Cal.App.5th 527. In *Lee*, three members of the board of a homeowners' association (HOA) sued six other members of the board, but not the HOA itself, for declaratory relief "following a board vote of six-to-three to renew an [HOA] managerial contract—in which plaintiffs voted against such renewal." The six defendants brought an anti-SLAPP motion arguing the complaint was based upon their decisions and statements at board meetings. The trial court denied the motion reasoning that the three plaintiffs were seeking only a declaration of what was required under the HOA's governing documents. (*Id.* at pp. 530-531.)

The appellate court "conclude[d] it is significant" that the defendants in the case were individual board members and not the HOA. (*Lee*, *supra*, 6 Cal.App.5th at p. 542.) The appellate court held that "an individual board member's vote on a 'public issue' implicates his or her right to free speech under section 425.16." (*Id.* at p. 545.) The appellate court reversed the trial court's order. (*Id.* at pp. 549-550.)

14

In the instant case, plaintiffs are not suing individual members of the board on the basis of their individual votes. Rather, plaintiffs are suing the Association for its ultimate decision to expel plaintiffs. Because plaintiffs are not suing individual board members, we are not persuaded by the Association's reliance on *Lee*.

The Association contends "that part of [Plaintiffs'] intent in filing this action was to chill the Association's ability to effectuate its decision at its board meetings by seeking to preemptively prohibit the Association from filing its unlawful detainer action." " 'The subjective intent of a party in filing a complaint is irrelevant in determining whether it falls within the ambit of section 425.16. "There simply is 'nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable.' " ' " (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 120.) Because Plaintiffs' intent is not relevant to the anti-SLAPP analysis, we find the Association's assertion to be unpersuasive.

The Association contends that a Notice to Vacate is "a prerequisite to the unlawful detainer" and "[e]ach of [Plaintiffs'] causes of action incorporate an allegation that the Association's Notice to Vacate was defective." In *Marlin v. Aimco Venezia, LLC* (*Marlin*), the appellate court wrote, "Even if we assume filing and serving the Ellis Act notice and the notice to vacate constituted protected petitioning or free speech activity 'the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' Rather, the critical question in a SLAPP motion 'is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' [¶] Defendants have fallen

15

victim to the logical fallacy *post hoc ergo propter hoc*—because the notices preceded plaintiffs' complaint the notices must have caused plaintiffs' complaint. The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* At pp. 160-161, fns. omitted.)

Plaintiffs' lawsuit arises from the Association's decision to expel them from the RV Park. For example, in the FAC, Plaintiffs alleged, "There is no provision in the CC&Rs or bylaws for expulsion." As another example, in the FAC, plaintiffs alleged, "[The Association] has not complied with the governing documents in its attempt to exclude Plaintiffs." The Notice to Vacate is a consequence of the Association's decision to expel plaintiffs, but the Notice is not the basis for Plaintiffs' lawsuit. Plaintiffs are not suing the Association solely because the Association served a Notice to Vacate. Accordingly, we are not persuaded that the trial court erred.

## C. PROBABILITY OF PREVAILING

The Association contends Plaintiffs failed to demonstrate a probability of prevailing on their lawsuit. Because the Association did not meet its burden on the first prong of the anti-SLAPP analysis, we need not proceed with analyzing the second prong.

16

(*Third Laguna Hills Mutual v. Joslin*, *supra*, 49 Cal.App.5th at pp. 374-375.) Accordingly, we do not address the merits of this contention.

  D.  <u>JUDICIAL NOTICE</u>

  The Association requests this court take judicial notice of three civil harassment restraining orders. The Association contends judicial notice is proper because the restraining orders are court records. (Evid. Code, § 452, subd. (d)(1).)

  "A party requesting judicial notice of material under Evidence Code sections 452 or 453 must provide the court and each party with a copy of the material." (Cal. Rules of Court, rule 3.1306(c).) Typically, a civil harassment restraining order is delivered to local law enforcement so that it may be entered into the California Law Enforcement Telecommunications System (CLETS). (§ 527.6, subd. (r).) If the harassment case involves a minor, then "[t]he court may order the information specified in paragraph (1) be kept confidential." (§ 527.6, subd. (v).) The "information specified in paragraph (1)" includes but is not limited to, "the minor's name, address, and the circumstances surrounding the protective order with respect to that minor." (§ 527.6. subd. (v)(1)&(2).)

  The Association did not provide this court with copies of the restraining orders because, the Association asserts, "the documents are unavailable for public view due to being confidential civil restraining orders." The Association does not cite any law to support its position that civil harassment restraining orders are generally confidential or that the entirety of a civil harassment restraining order is typically sealed. The Association does not provide a declaration reflecting the trial court ordered the three

17

restraining orders sealed. The Association does not provide copies of the relevant dockets to indicate the restraining orders were sealed.

We deny the Association's request for judicial notice because (1) the Association has provided nothing to support its assertion that the restraining orders are confidential; and (2) the Association has not provided copies of the restraining orders with the request for judicial notice. (Cal. Rules of Court, rule 3.1306(c).)

E.    FRIVOLOUS MOTION

Plaintiffs assert, "This is a frivolous motion." Plaintiffs further assert, "The frivolous nature of this motion is demonstrated by the persistence in moving forward with this motion following the judgment for Plaintiffs in the Unlawful Detainer Action and the self-serving vendetta pursued by the Board of Directors against Plaintiffs because of an event occurring 10 years previously."

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).)

In this record, we do not see a finding pertaining to the frivolity of the anti-SLAPP motion. Thus, it is unclear if Plaintiffs are asking this court to find the appeal is frivolous or if they are discussing a ruling that was not made. Because Plaintiffs' argument lacks clarity, we conclude it has been forfeited. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
           J.

We concur:

RAMIREZ
    P. J.

McKINSTER
    J.