Filed 1/30/26  Zhang v. Invest L.A. Regional Center CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RUOJING ZHANG et al., | B332808 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23AHCV00773) |
| v. | |
| INVEST L.A. REGIONAL CENTER, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Joel L. Lofton, Judge.  Affirmed.

Han, Chris C. Han; Reid & Wise, Matthew Sava, Zheng Gao and Siyao Lin for Plaintiffs and Appellants.

Foley Bezek Behle & Curtis and Kevin D. Gamarnik for Defendants and Appellants.

———————————

Several limited partners of a partnership sued the partnership and the general partner. The trial court denied both the general partner and partnership's special motion to strike pursuant to Code of Civil Procedure[1] section 425.16 and the limited partners' motion for a preliminary injunction. All parties appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The United States Citizenship and Immigration Services (USCIS) operates the EB-5 program, which allows qualified foreign nationals to obtain lawful permanent resident status (green cards) in the United States by investing in certain commercial enterprises. Marina Del Rey EB5, LP (the Partnership) was formed by Invest L.A. Regional Center, LLC (the General Partner) for the purpose of participating in the EB-5 program.

Obtaining an EB-5 green card involves multiple steps: the filing of an initial immigration petition (I-526 petition) supported by documents demonstrating the petitioner's investment in a qualifying commercial enterprise (8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6(a), (j)); receipt of a conditional green card (8 U.S.C. § 1186b(a)(1)); and completion of a two-year conditional residency period known as the "Sustainment Period." During the Sustainment Period, the investor must maintain their investment capital at risk to preserve their EB-5 eligibility. Within two years after receiving a conditional green card, the investor must file a petition (I-829 petition) proving they satisfied

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

2

the program's requirements and seeking removal of conditional status.  (8 U.S.C. § 1186b(c)(1), (d).)  If the I-829 petition is approved, the investor's green card becomes permanent. (8 U.S.C. § 1186b(c)(1), (c)(3)(A); 8 C.F.R. § 216.6(a), (c) & (d)(1).)

Plaintiffs Ruojing Zhang, Qingzhang Meng, Jingdong Liu, Meng Chen, Ning Zhang, Chun Chung Yeung, Heng Yang, Yanyun Xia, Lewei Wang, and Xinhua Guo, all Chinese citizens, are among 71 investors who each invested $500,000 and became limited partners of the Partnership in connection with their applications for green cards.  The $35.5 million capital raised by the Partnership was used to make a five-year loan to MDR Hotels, LLC.

When Plaintiffs invested in the Partnership, an EB-5 investor from mainland China could become a United States lawful permanent resident in less than five years.  However, due to a limit on the annual number of immigrant visas and a surge in demand, a backlog (called visa retrogression) emerged.  With retrogression, investors from oversubscribed countries like mainland China may experience extended wait times for visa availability, lengthening the entire permanent residency process. This includes a prolonged period of time between approval of the I-526 petition and the grant of the conditional green card, which, as a result, means that EB-5 investors from mainland China may have to keep their investment capital at risk for extended periods.

The Partnership's loan to MDR Hotels was repaid in full in 2022.  Plaintiffs had either completed their Sustainment Periods and received their green cards or withdrawn their applications. However, nearly half the limited partners, most from mainland China, had not yet obtained permanent resident status.

3

Accordingly, the General Partner announced the Partnership's funds would be redeployed in an appropriate investment.

Plaintiffs no longer needed, and did not want, their capital to be at risk. They objected to the reinvestment of the capital, then notified the General Partner of the withdrawal of their subscriptions and demanded the return of their subscription amounts. On April 7, 2023, Plaintiffs filed suit against the Partnership and the General Partner.

In their operative complaint, Plaintiffs alleged causes of action against the Partner and General Partner (together, Defendants), alleging the reinvestment of their funds without their consent violated the Limited Partnership Agreement (LPA), Defendants' fiduciary duties, and their subscription agreement; they also presented a claim for injunctive relief as a separate cause of action. Additionally, Plaintiffs asserted two claims against the General Partner only: breach of the section of the LPA concerning access to the records of the Partnership, and violation of Corporations Code section 15903.04, both based on the alleged refusal to provide Plaintiffs with access to documents and information Plaintiffs had requested. Plaintiffs asked for declarations that reinvesting their capital without consent breached the LPA and Defendants' fiduciary duties; a temporary and permanent injunction barring reinvestment; monetary and punitive damages; and an order that Plaintiffs receive access to Partnership documents and records they had demanded.

Defendants filed a special motion to strike the first four causes of action as a strategic lawsuit against public participation under section 425.16 (an anti-SLAPP motion). Plaintiffs sought a preliminary injunction preventing Defendants from reinvesting any portion of the loan repayment proceeds without the express

4

written consent of the limited partners, and from refusing to produce for inspection and copying the records Plaintiffs had requested. The trial court denied both motions and all parties appeal.

## DISCUSSION

I. **Anti-SLAPP Motion**

" 'The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " ' " (*Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1283 (*Medallion*).)

A. <u>Trial Court Proceedings</u>

In their anti-SLAPP motion, Defendants argued the causes of action asserted against them on the basis of the reinvestment of Partnership funds arose from activity protected by section 425.16, subdivisions (e)(1), (2), and (4). First, they contended the preparation and submission of documents in support of a green card application constituted protected activity under section 425.16, subdivisions (e)(1) and (e)(2). Second, they argued that because the reinvestment was for the purpose of supporting the investors' green card petitions, it fell within the scope of section 425.16, subdivision (e)(4) as "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech." Additionally, Defendants

5

argued Plaintiffs could not establish a probability of success on their claims.

In opposition to the anti-SLAPP motion, Plaintiffs argued their claims arose not from protected free speech or petitioning activity but from the reinvestment of Plaintiffs' capital without authority. They contended Defendants had not met their burden of showing the claims arose from protected activity because the causes of action must arise from Defendants' own acts in furtherance of their own exercise of petition or free speech rights, and, here, it was the limited partners, not Defendants, filing green card applications. As for Defendants' argument that the reinvestment of Partnership funds was protected activity under section 425.16, subdivision (e)(4), Plaintiffs contended this provision was inapplicable because no public issue or public interest was involved in this private contractual lawsuit, and Defendants' conduct did not contribute to or further the public conversation on an issue of public interest. To any extent the claims did arise from protected conduct, Plaintiffs argued they had established their claims had merit because reinvesting Plaintiffs' capital without consent clearly breached the relevant agreements and Defendants' fiduciary duties.

The trial court denied the anti-SLAPP motion, finding Defendants had not demonstrated their causes of action arose from protected activity. Section 425.16, subdivisions (e)(1)–(3) all protect various written or oral statements or writings, and because "Defendants are not making 'any written or oral statement' under conditions defined by section 425.16" but instead were investing or planning to invest Plaintiffs' capital contributions, the causes of action did not arise from protected activity pursuant to section 425.16, subdivision (e)(1) or (e)(2).

6

The court also rejected the contention that Plaintiffs' claims arose from activity within the scope of section 425.16, subdivision (e)(4) because Defendants did not demonstrate the investment was in relation to a public interest: the subject of Defendants' investment was not a person or entity in the public eye, Defendants did not show it could affect a large number of people, and Defendants did not demonstrate the investment occurred in the context of an ongoing controversy or affected a community in a manner similar to that of a governmental entity.

### B.  Applicable Law

"Litigating an anti-SLAPP motion is a two-step process. 'First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has "at least 'minimal merit.' " [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim.' " (*Medallion, supra*, 100 Cal.App.5th at pp. 1283–1284.)

To determine whether Plaintiffs' claims arise from protected activity, we " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Section 425.16, subdivision (e) identifies four categories of statements and/or conduct that are protected under the anti-SLAPP statute as acts in furtherance of a person's right of

7

petition or free speech under the United States or California Constitution in connection with a public issue. Three of these categories are invoked by Defendants here. Section 425.16, subdivision (e)(1) protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Section 425.16, subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Rulings on anti-SLAPP motions are reviewed de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

C.    Analysis

Defendants assert the first four causes of action are based on activity protected by section 425.16, subdivisions (e)(1), (e)(2), and (e)(4).

Defendants first claim anti-SLAPP protection because petitioning for a green card is protected activity under section 425.16, subdivisions (e)(1) and (e)(2). The anti-SLAPP law applies only to "cause[s] of action *against a person arising from any act of that person* in furtherance of the person's right of petition or free speech" (§ 425.16, subd. (b)(1), italics added), and a "claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).) Therefore, for the anti-SLAPP law to apply, "

8

'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Id.* at p. 1063.) That is, the defendant must demonstrate that "*the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in [section 425.16,] subdivision (e)." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66, italics added.)

These causes of action against Defendants do not arise from any act of Defendants in furtherance of Defendants' right of petition or free speech. (§ 425.16, subd. (b)(1).) The conduct by Defendants that underlies these causes of action is reinvesting or threatening to reinvest Partnership funds without the authority to do so. An unauthorized investment is plainly not a written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. (*Id.*, subd. (e)(1), (2).) The action Defendants point to as justifying anti-SLAPP protection—applying for green cards—is not their own conduct: they are not the ones petitioning for green cards. Defendants may not wrap themselves in someone else's petitioning activity to obtain anti-SLAPP protection. (See *Park*, *supra*, 2 Cal.5th at p. 1063 [*defendant's* act underlying the cause of action must *itself* have been an act in furtherance of the right of petition or free speech].)

Next, Defendants contend that because green card petitions constitute protected petitioning activity, "the activities that are the necessary predicate to the submission of the green card applications" constitute "conduct in furtherance of the exercise of

9

the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) They argue the limited partners seeking green cards must show their funds were at risk, so reinvesting the funds furthers the green card petitions and is therefore protected activity.

This extremely broad argument ignores the test established by the California Supreme Court for determining whether speech or conduct falls within section 425.16, subdivision (e)(4). In *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*), the Supreme Court held that both a statement's content and context must be considered when determining if it furthers the exercise of constitutional speech rights in connection with a matter of public interest. A court considering whether speech falls within section 425.16, subdivision (e)(4) must first ask what public issue or issue of public interest it implicates, a question that involves the content of the speech. (*Ibid.*) Second, the court must "ask what functional relationship exists between the speech and the public conversation about some matter of public interest," an inquiry informed by context. (*Id.* at pp. 149– 150.) It is not enough for the statement or conduct to " 'refer to a subject of widespread public interest;' " it " 'must in some manner itself contribute to the public debate.' " (*Id.* at p. 150.) "[W]e examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.)

Even if we assume, arguendo, that this reinvestment of Partnership funds implicates public issues or issues of public interest, when we consider the relationship of the conduct to matters of public interest (*FilmOn, supra,* 7 Cal.5th at p. 152),

Defendants have not demonstrated the reinvestment participated in or furthered public discourse concerning lawful permanent resident status or applications. Defendants contend the question of "whether EB-5 funds can be redeployed is an issue of public interest that not only affects the remaining limited partners' green card applications, but much of the EB-5 industry." But the question presented here is not whether any EB-5 funds may ever be reinvested; it is the far more narrow question of whether the terms of this specific limited partnership agreement permit the General Partner to reinvest Partnership funds without the consent of the limited partners. This dispute between a few limited partners and their partnership concerning the investment of their funds in projects beyond the initial at-risk loan is a private contractual conflict concerning private investments, affecting few participants and none beyond those directly involved, relating to projects of no established widespread interest, and having no demonstrated impact on a larger community. Like the Supreme Court in *FilmOn*, we conclude the context of the conduct at issue demonstrates Defendants did not reinvest or plan to reinvest Partnership funds in furtherance of free speech or petition "in connection with" an issue of public interest. (§ 425.16, subd. (e)(4).)[2] The anti-SLAPP motion was properly denied.

---

[2] As we have concluded the first prong of the anti-SLAPP analysis was not met, we need not consider whether Plaintiffs have proven their claims have at least minimal merit. (*Swanson v. County of Riverside* (2019) 36 Cal.App.5th 361, 373.)

11

## II.  Motion for a Preliminary Injunction

### A.  Applicable Law

" '[A] preliminary injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of its claim.' " (*Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 731.)  " 'The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action.' " (*McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 98.)  "In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction." (*Western Growers Assn. v. Occupational Safety & Health Standards Bd.* (2021) 73 Cal.App.5th 916, 930.)  " 'The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.' " (*Take Me Home Rescue v. Luri* (2012) 208 Cal.App.4th 1342, 1350.)  When determining whether to issue a preliminary injunction, the trial court exercises its discretion by considering and weighing the two interrelated factors.  (*Ibid.*)

"Our review of a preliminary injunction 'may trigger any or all of the three standards of appellate review.' " (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 568.)  To the extent the trial court's assessment of likelihood of success on the merits depends on legal rather than factual questions, such as when the meaning of a contract or statute are at issue, our

12

review is de novo.  (*Costa Mesa City Employees Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 306.)  We review the trial court's findings of fact under the substantial evidence standard.  (*Anderson*, at p. 568.)  The trial court's evaluation and weighing of the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion. (*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280–281.)  A court will be found to have abused its discretion only when it has " ' " 'exceeded the bounds of reason or contravened the uncontradicted evidence.' " ' " (*Id.* at p. 281.) The burden rests with the party challenging a trial court's decision to grant or deny a preliminary injunction to make a clear showing of an abuse of discretion.  (*Ibid.*)

B.     Trial Court Proceedings

Plaintiffs moved for a preliminary injunction barring Defendants from "1) reinvesting any portion of the loan repayment proceeds received from MDR Hotels, LLC without the express written consent of the limited partners . . . and 2) refusing to produce for inspection and copying the documents requested in categories 1 and 4–8 of Plaintiffs' books and records demand letter . . . , including records showing where the Partnership's capital has been held since July 2022."

Plaintiffs argued they were likely to prevail on their claims for breach of contract and fiduciary duties because the LPA limited the business of the partnership to the original project, the MDR Hotels loan, and confined the General Partner's power to matters strictly tied to that business.[3]  Plaintiffs contended they

---

[3]     Plaintiffs also alleged a likelihood of success on their claim for breach of the subscription agreement between the General

13

were likely to prevail on their claims relating to Partnership books and records because the denial of materials and information they had requested clearly violated section 10.04 of the LPA and Corporations Code sections 15903.04 and 15901.11, which granted them the right, without providing a reason, to review Partnership records and to obtain a list of the limited partners' names and addresses. If they were required to state a purpose, Plaintiffs argued, it was "self-evident": obtaining documents relating to the loan repayment and reinvestment and communicating with other investors about the General Partner's actions and plan.

Plaintiffs argued the balance of harms weighed in their favor because Defendants would not suffer any harm from a preliminary injunction preventing them from reinvesting the portion of the Partnership's capital representing Plaintiffs' contribution. Without an injunction, however, Defendants would carry out their reinvestment plan and subject Plaintiffs to the immediate and irreparable harm of "los[ing] their entire capital." Moreover, they asserted, "a preliminary injunction should be granted to prevent a general partner from refusing to honor its books and records obligations."

In opposition to the motion for a preliminary injunction, Defendants argued Plaintiffs had no likelihood of success on their causes of action relating to the reinvestment of Partnership funds because the LPA allowed reinvestment. Defendants contended Plaintiffs were unlikely to prevail on their books and records

---

Partner and the limited partners. The court's denial of the preliminary injunction motion with regard to this cause of action is not challenged on appeal.

14

claims because (1) the financial documents they sought required an explanation of purpose, which they had not provided, and (2) the Partnership had the right to keep confidential information it believed was not in the Partnership's best interest to disclose.

Defendants also argued the balance of harms weighed against issuing a preliminary injunction. Plaintiffs' harm was not irreparable because damages were an adequate remedy, but Defendants would be subject to legal liability and reputational harm if the limited partners who had not yet received green cards lost their eligibility due to the Partnership's failure to reinvest funds in qualifying enterprises.

Concluding Plaintiffs had not shown a likelihood of success on their reinvestment-based causes of action, the trial court denied the motion for a preliminary injunction. The court found the LPA expressly gave the General Partner the power to reinvest capital, and Plaintiffs could not identify any LPA provision entitling them to withdraw capital once the initial project was completed while the Partnership was ongoing. Also, Plaintiffs had not demonstrated how the reinvestment violated fiduciary duties or posed risks.

As for the claims based on access to financial records and contact information, the court found neither party had identified what information was sought and which portion of Corporations Code section 15903.04 applied to that information: subdivision (a), in which case no purpose for the request was needed, or subdivision (b), requiring the limited partner to state a purpose reasonably related to their interest. Although Plaintiffs had some likelihood of success because they were clearly entitled to the limited partners' names and addresses, they had not shown they would suffer harm without an injunction or that the balance

15

of harms favored them. Absent evidence of irreparable injury or interim harm without an injunction, Plaintiffs were not entitled to one.

C. <u>Analysis</u>

1. *Likelihood of Prevailing on Claims for Breach of Contract and Breach of Fiduciary Duties*

The elements of a cause of action for breach of contract are the existence of the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) The elements of a breach of fiduciary duty cause of action are the existence of a fiduciary relationship, breach of fiduciary duty, and damages. (*Id.* at p. 820.) The central issue in assessing Plaintiffs' likelihood of prevailing on the breach of contract and breach of fiduciary duty claims is whether the LPA prohibits the reinvestment of Partnership funds without their consent. Plaintiffs have not demonstrated the LPA prohibits the General Partnership from reinvesting Partnership funds in investments consistent with the Partnership's objective to qualify the limited partners for lawful permanent resident status through the EB-5 program.

The LPA grants powers to the Partnership and General Partner in expansive terms. Section 3.02 authorizes the Partnership "to do all acts and things in furtherance of and incidental to the Partnership Business," to "mortgage, sell, lease, transfer, and exchange or otherwise convey or encumber all or part of the Partnership Business in furtherance of any and all of the objectives of the Partnership business," and to "enter into, perform, and carry out contracts of any kind necessary to, or in

16

connection with or incidental to the operation of the Partnership Business."  Section 8.01 gives the General Partner power to "manage, operate, and control the Partnership and to do all things and make all decisions necessary or appropriate to carry on the business and affairs of the Partnership."  It provides that the scope of the General Partner's "power and authority shall[] encompass all matters connected with or incident to the Partnership Business, including . . . but not limited to," a list of enumerated powers.  Among those powers is the General Partner's authority to "spend and or invest the capital and revenue of the Partnership to maximize return to the Partnership."  Section 8.01(5) not only gives the General Partner the power to "borrow or lend on a secured or unsecured basis in the name of the Partnership," it also appears to contemplate the Partnership making more than one loan, as it refers to the Partnership accepting collateral for "loans" it makes.  Section 8.01 additionally provides that in addition to the specific rights and powers already granted by the LPA, the General Partner also "possess[es] and enjoy[s] and may exercise all the rights and powers of a general partner as provided in the" Uniform Limited Partnership Act of 2008 (Corp. Code, § 15900 et seq.).  That law provides that generally, "any matter relating to the activities of the limited partnership may be exclusively decided by the general partner."  (Corp. Code, § 15904.06, subd. (a).)  In view of these broad grants of authority and the LPA's purpose, we conclude the LPA gives the General Partner the authority to reinvest Partnership funds in investments that satisfy the EB-5 program's requirements without obtaining consent from the limited partners.

Plaintiffs, however, argue the LPA's "plain and unambiguous language" categorically restricts Defendants' activities and powers to the single loan to MDR Hotels. This argument is founded on the definition of "Partnership Business" in LPA section 2.21 as "the making and the management of the loan by the Partnership to MDR Hotels, LLC described in Section 3.01 and all acts in furtherance of and incidental to the said loan," and section 3.01's statement that "The purpose of the Partnership is to raise capital to fund a loan to a business in a Targeted Employment Area to create employment therein. The business of the Partnership shall be the making and management of an interest-bearing secured loan for a principal amount of up to $36.0 million with a term of not less than five (5) years ('Loan') to MDR Hotels, LLC." Plaintiffs read section 3.02's grant of authority to the Partnership to "engage in the Partnership Business and to do all acts and things in furtherance of and incidental to the Partnership Business," and section 8.01's conferral of authority to the General Partner to "matters connected with or incident to the Partnership Business," as restrictive provisions limiting them to acts furthering the MDR Hotels loan.

From these provisions, Plaintiffs reason that the General Partner lacks authority to take any actions beyond managing the MDR Hotels loan and may not engage in a reinvestment of Partnership capital absent consent of the limited partners. They conclude the Partnership Business was "completed" when the loan was repaid, a new investment cannot be considered to be connected with or incidental to the completed loan, and therefore, the threatened reinvestment breaches the LPA and Defendants' fiduciary duties.

18

Language in a contract must be construed in the context of the instrument as a whole (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1118), and Plaintiffs' interpretation of the LPA is so narrow that it elevates the defined term "Partnership Business" above the Partnership's actual objective. While a "partnership's purpose limits the general partner's authority and therefore circumscribes its fiduciary duties," "[t]he purpose clause is not the only available evidence of the partnership's purpose." (*JER Hudson GP XXI LLC v. DLE Investors, LP* (Del. Ch. 2022) 275 A.3d 755, 787.)[4] A court may also consider " 'the partnership's stated purposes, the precedent set by the partnership's prior "custom or course of dealing" and "the general custom" of analogous partnerships.' " (*Ibid.*) Here, as acknowledged in the operative complaint, the Partnership exists to provide investors with the economic investment required for them to obtain lawful permanent resident status through the EB-5 program. Consistent with that objective, the duration of the Partnership's existence is keyed to the time it takes for all investors to complete the EB-5 green card process: LPA section 1.05 provides the term of the Partnership cannot be less than the "time within which all Limited Partners who continue to desire to become U.S. permanent residents have received the final determination from USCIS on their I-829 petitions based on their investment in the Limited Partnership." Similarly, section 13.01 prohibits the dissolution or termination of the Partnership before

---

[4] "California courts have routinely relied 'on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.' " (*Kanter v. Reed* (2023) 92 Cal.App.5th 191, 208.)

19

all limited partners seeking green cards have received final determinations on their I-829 petitions or have stopped participating in the EB-5 program.

Plaintiffs' claim that their consent was required for the reinvestment of some or all the Partnership funds is not supported by the LPA. It makes no sense to create an EB-5 investment vehicle partnership that can only carry out its primary function if further permission is later obtained. The LPA does not appear to provide a mechanism for obtaining investor consent to subsequent investments or rules establishing what consent must be obtained.[5] Nor are we persuaded by

---

[5] Must limited partners consent to reinvestment only with respect to the Partnership funds corresponding to their capital contributions, or must all limited partners consent to any reinvestment? Plaintiffs have not been consistent. At some points in the motion for a preliminary injunction Plaintiffs limited their claim that they had to consent to the reinvestment of the amount of Partnership funds corresponding to their capital contributions, but elsewhere in the same moving papers they repeatedly requested Defendants be enjoined from "reinvesting any portion of the loan repayment proceeds received from MDR Hotels, LLC without the express written consent of the limited partners to any project." If limited partners retain power to control funds corresponding to their initial contribution, why does the LPA not appear to contemplate differential treatment of Partnership funds, provide a mechanism for exerting this control, or allow withdrawal of those funds before the Partnership terminates? If, on the other hand, all limited partners must consent to any reinvestment, then once the initial loan was repaid Plaintiffs would have the power to hobble the Partnership. The Partnership could not dissolve because its terms require it to remain active until all the investors have finished the green card process, but neither could it provide the limited partners still in

20

Plaintiffs' claim that an interpretation of the LPA that confers broad authority on the General Partner would permit the General Partner to "freely use the investors' money for any purpose in any project."  Plaintiffs do not explain how this reading of the LPA would permit the General Partner to engage in investments inconsistent with the Partnership's objective to meet the EB-5 program's at-risk investment requirements or release the General Partner from its fiduciary duties to the limited partners.  " '[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923.)  Plaintiffs did not establish a likelihood of success on the merits on their breach of contract claim.

Plaintiffs' breach of fiduciary duty claim also rests on the premise that the LPA prohibits the reinvestment of Partnership capital without Plaintiffs' consent.  They allege in their operative complaint that the Defendants' fiduciary duties "includ[e] the fiduciary duty to safeguard their capital and not to use it for any unauthorized purpose," and contend reinvesting their capital over their objection breaches those duties.  These allegations are echoed in their opening brief, in which Plaintiffs assert that Defendants' "actions to reinvest without consent . . . undeniably demonstrate breaches of fiduciary duty through their failure to

---

the process of obtaining legal permanent resident status with a qualifying at-risk investment to support their applications because Plaintiffs oppose reinvestment.  This would subvert the whole point of the Partnership.

safeguard Partnership funds." Our conclusion that the LPA does not bar the reinvestment of Partnership funds absent the limited partners' consent means Plaintiffs also have not demonstrated a likelihood of success on this claim.

Plaintiffs also argue, with respect to their fiduciary duty claim, that the trial court erred when it found they had failed to submit evidence that the planned reinvestment would be risky. This contention is supported by two citations to the record: one to a letter in which the General Partner stated that any reinvestment would satisfy the at-risk requirement of the EB-5 program, and the other to a letter issued by the General Partner months after the trial court ruled on the preliminary injunction. The first does not establish that the contemplated reinvestment was any riskier than the initial investment, which also satisfied the at-risk requirement. The second, while included in the record by stipulation of the parties, did not yet exist at the time the trial court ruled on the preliminary injunction motion and therefore is irrelevant to the question of whether the court's ruling was correct when made. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) No exceptional circumstances appear that would justify deviating from this general rule in the present case.

The trial court did not err when it denied Plaintiffs' request for a preliminary injunction on their breach of contract and breach of fiduciary duty causes of action.[6]

### 2. *Cause of Action as to Partnership Records*

Plaintiffs also sought a preliminary injunction relating to two causes of action for denial of Partnership records and information: the fifth cause of action, in which they alleged the refusal to provide the requested documents and information violated section 10.04 of the LPA, which provides that "Limited Partners shall be entitled, upon written request directed to the General Partner, to (i) review the records of the Partnership at all reasonable times and at the location where such records are kept by the Partnership and (ii) obtain a list of the names and addresses of the Limited Partners"; and the sixth cause of action, in which Plaintiffs claimed the refusal to provide the desired documents and information violated the Corporations Code.

The trial court denied the motion for a preliminary injunction on these two causes of action. First, the trial court found Plaintiffs did not clearly identify what information was sought and whether it was sought under Corporations Code section 15903.04, subdivision (a) (no articulated purpose necessary) or subdivision (b) (purpose for the request must be shown). While the court found Plaintiffs were entitled to

---

[6] We deny Defendants' request for judicial notice filed January 10, 2025, referring to documents filed by Plaintiffs in a separate action; we find the request not relevant to the issues on appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, disapproved on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

information such as the names and addresses of each limited partner and therefore had established some probability of success on their fifth cause of action for violation of section 10.04 of the LPA, Plaintiffs had not specified the harm they faced from the refusal to provide the information and how that harm compared to the harm faced by Defendants if the injunction was issued, and therefore had failed to show the balance of harms favored granting a preliminary injunction on this claim.

Plaintiffs argue the trial court erred when it concluded the parties had not clearly identified the information sought and the subdivision of Corporations Code section 15903.04 applicable to that information. We disagree. Although in their complaint Plaintiffs identified wide-ranging categories of records and information to which they claimed to be entitled, in their motion for a preliminary injunction they lumped all their requested items together and failed to discuss with specificity the nature of the records and documents sought or to distinguish whether they were sought pursuant to Corporations Code section 15903.04, subdivision (a) or (b). By failing to provide particularized argument supporting their entitlement to the various types of documents and information they requested, Plaintiffs failed to meet their burden in the trial court to demonstrate a likelihood of success on their sixth cause of action. The trial court did not err when it ruled Plaintiffs failed to set forth sufficiently detailed information in their motion for a preliminary injunction to permit an analysis of their Corporations Code claim and therefore did not demonstrate a likelihood of success on that count.

Plaintiffs also contend the trial court erroneously found they had not demonstrated that the balance of harms favored granting an injunction. But in Plaintiffs' trial court briefing on their motion for a preliminary injunction, they did not identify *any* harm they would suffer from being denied an injunction preventing Defendants from refusing them access to the requested documents and information. Instead, their argument regarding the balance of harms identified only harms they claimed would result from the allegedly unauthorized reinvestment of their capital. Their discussion of harm in their reply brief in the trial court similarly addressed only the harm they anticipated if the reinvestment of Partnership funds was not enjoined. "A party moving for injunctive relief bears the burden of showing the harm that would result if a preliminary injunction were not granted. [Citation.] In the absence of a verified showing of threatened harm by the moving party, a trial court exceeds its jurisdiction by granting a preliminary injunction." (*Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 640, italics omitted.) As Plaintiffs did not demonstrate in the trial court that they would suffer any harm if Defendants were not enjoined from denying them the records and information they requested, the trial court did not abuse its discretion when it denied the motion for a preliminary injunction.

25

## DISPOSITION

The orders denying the special motion to strike and the motion for a preliminary injunction are affirmed. Each party shall bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

VIRAMONTES, J.

UZCATEGUI, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26